UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **KRYSTAL BOYER**, | Case No. 3:12-cv-00392-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CAROLYN W. COLVIN**, Acting Commissioner of Social Security, | |
| Defendant. | |

Bruce Brewer, 419 Fifth Street, Oregon City, OR 97045. Attorney for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Richard Rodriguez, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Attorneys for Defendant.

**Michael H. Simon, District Judge**.

Plaintiff, Ms. Krystal Boyer seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is supported by substantial evidence and based on the proper legal standards, the decision is AFFIRMED.

## BACKGROUND

### A.  The Application

Ms. Boyer protectively filed an application for SSI and DIB on August 21, 2009, alleging disability beginning on December 1, 2008. Tr. 131-43. She alleges disability due to post-traumatic stress disorder, panic, anxiety, abdominal pain, and lack of sleep. Tr. 156, 188. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 91-99. After an administrative hearing, held on December 16, 2010, the ALJ found Ms. Boyer not disabled. Tr. 14-63. The Appeals Council denied Ms. Boyer's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Ms. Boyer now seeks judicial review of that decision.

### B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

Page 2 – OPINION AND ORDER

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a); 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
    §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe
    impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii);
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
    the listed impairments, the analysis continues. At that point, the ALJ must
    evaluate medical and other relevant evidence to assess and determine the
    claimant's "residual functional capacity" ("RFC"). This is an assessment
    of work-related activities that the claimant may still perform on a regular
    and continuing basis, despite any limitations imposed by his or her
    impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e);
    416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
    proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC
    assessment? If so, then the claimant is not disabled. 20 C.F.R.
    §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform
    his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience,
    is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ performed the sequential analysis in his December 23, 2010 decision. Tr. 14-25. At step one, the ALJ found that Ms. Boyer had not engage in substantial gainful activity since the alleged onset date, December 1, 2008. Tr. 16. At step two, the ALJ concluded that Ms. Boyer's anxiety disorder, personality disorder, and obesity were severe impairments. Tr. 16-17. At step three, the ALJ ruled that Ms. Boyer did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations. Tr. 17-18.

The ALJ next assessed Ms. Boyer's residual functional capacity ("RFC"). The ALJ found that Ms. Boyer retained the capacity to perform a full range of work at all exertional levels, but with the following nonexertional limitations: "she should be limited to entry level work with no public contact and only occasional contact with coworkers; and she should avoid dangerous machinery." Tr. 18-24. At step four, the ALJ determined that Ms. Boyer's RFC rendered her unable to perform her past relevant work. Tr. 24. At step five, based on the testimony of a vocational expert ("VE"), the ALJ concluded that Ms. Boyer could perform jobs that exist in significant numbers in the national economy. Tr. 24-25. Thus, the ALJ found Ms. Boyer not disabled. Tr. 25.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation

marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground

upon which the Commissioner did not rely. *Id.*; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC*

*v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## DISCUSSION

Ms. Boyer argues that the ALJ erred by: (1) improperly rejecting her subjective symptom

testimony; (2) improperly discrediting the opinions of Sandra Lundblad, Ph.D., and Linda

Romig, M.A.; (3) inadequately assessing the lay testimony; and (4) failing to confirm the

consistency of the VE's testimony with the Dictionary of Occupational Titles ("DOT").

### A. Credibility of Ms. Boyer's Testimony

Ms. Boyer first argues that the ALJ did not provide clear and convincing reasons for

rejecting her subjective symptom testimony regarding the extent of her impairments. The Ninth

Circuit has developed a two-step process for evaluating the credibility of a claimant's own

testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*,

572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has

presented objective medical evidence of an underlying impairment 'which could reasonably be

expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028,

1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)).

When doing so, the claimant "need not show that her impairment could reasonably be expected

to cause the severity of the symptom she has alleged; she need only show that it could reasonably

have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.

1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Applying the first step of the credibility framework, the ALJ found that Ms. Boyer's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 19. In applying the second step, however, the ALJ found Ms. Boyer's "statements concerning intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment." *Id.* In support of this finding, the ALJ offered several specific reasons: (1) inconsistent activities of daily living; (2) improvement with medication and therapy; (3) inconsistent statements; and (4) non-compliant and conservative medical treatment. Tr. 19-21.

At the hearing, Ms. Boyer testified that she spends her days taking care of her three-year-old daughter, who is autistic. Tr. 46-47. She stated that she is unable to work because "I can't understand directions, and I just panic." Tr. 46. Ms. Boyer testified that she experiences "three panic [attacks], at least, a day . . . I have panics sometimes that last for six hours." Tr. 51-51. Additionally, she reported that she hyperventilates and faints after a severe panic attack, which has "happened four times this year." Tr. 51. When asked to elaborate on what precludes her from working, given her childcare and household responsibilities, Ms. Boyer remarked that "I do everything that I can do in the house . . . I'm a good mom when we're at home; but when we go outside, that's when . . . I panic" because "I can't be around people." Tr. 47-51. She acknowledged, however, that she is capable of leaving the house for medical and legal appointments.  Tr. 49. When asked why she had not yet followed up on her counselor's referral to Victim Services, Ms. Boyer responded that "I haven't gotten about to that . . . [b]ecause I have

appointments every week for my daughter, and appointments for myself, and we've just been busy, and it kind of got put on the backburner . . . [a]nd I'm scared to leave my house." Tr. 57.

As the ALJ noted, despite Ms. Boyer's subjective complaints, the record demonstrates that she engaged in fairly extensive activities both within and outside of her home. Tr. 19-20. For example, she lives alone but during the day takes care of her active three-year-old autistic child, which includes attending the child's speech therapy and occupational therapy appointments. Tr. 46-47, 374-75, 377, 380, 441. She also attended her own weekly counseling and other appointments as needed. *See, e.g.*, Tr. 338-61, 407-84 (seeking treatment for pain, injuries, and/or medication management regularly, varying from approximately once per month to once per week), 364-404 (weekly counseling sessions). Ms. Boyer reported that in 2009 she engaged in various hobbies, such as jewelry-making, horticulture, and car mechanics, and went to the community center for a "stay and play program" with her daughter once or twice per month. Tr. 174, 252. She also reported that in 2010 she visited the library and traveled to Fred Meyer's for "day care, while she wanders the store." Tr. 346, 388. In addition, Ms. Boyer prepared food for her child several times a day, washed dishes and laundry weekly or biweekly, and went grocery shopping monthly. Tr. 164-66, 172-74.

After summarizing this evidence, the ALJ found that these activities belied Ms. Boyer's testimony regarding the extent of her impairments. Tr. 19-20. Accordingly, the ALJ provided a clear and convincing reason, supported by substantial evidence, for finding Ms. Boyer's subjective complaints not credible. *See Orn*, 495 F.3d at 639 (contradictory activities of daily living may be a clear and convincing reason); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (ALJ may consider "inconsistencies either in [the claimant's] testimony or between his [or her] testimony and his [or her] conduct"); *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir.

2012) (ALJ may discredit a claimant's testimony when he or she reports activities of daily living that "indicat[e] capacities that are transferable to a work setting" or "contradict claims of a totally debilitating impairment") (citations omitted).

The ALJ also found that Ms. Boyer's other inconsistent statements further undermined her credibility.  Tr. 21. The ALJ may reject a claimant's subjective testimony based on his or her prior inconsistent statements. *Light*, 119 F.3d at 792. For example, in May 2010, Ms. Boyer told her counselor that she fainted "maybe three times in [the] past five years" during panic attacks yet, at the December 2010 hearing, she testified that "it happened four times this year." *Compare* Tr. 51, *with* Tr. 349.  There is only one reference in the record to a fainting episode in 2010, and it took place in October and was precipitated by a dog bite. Tr. 343, 365. Additionally, while Ms. Boyer reports being unable to leave the house due to her panic disorder, recent statements made to her counselor indicate that her daughter's behavior, at least in part, contributed to her difficulties with being in public. Tr. 374-75 ("[c]lient reported that it is very difficult for her to go anywhere with her child because of her physical violence to others").

Moreover, the ALJ found that Ms. Boyer's "treatment has been minimal and conservative and claimant has not always followed through with appointments, recommendations and referrals."  Tr. 21. Failure to seek or follow up on medical treatment is a clear and convincing reason to reject a claimant's subjective statements. *Burch*, 400 F.3d at 681; *Fair v. Bowen*, 855 F.2d 597, 603-04 (9th Cir. 1989); *see also* SSR 96-7p, *available at* 1996 WL 374186. In 2009, Ms. Boyer ceased mental health treatment after one session, despite her counselor's opinion that "the prognosis for the client is good if she follows through on attending her counseling appointment." Tr. 298-301. Ms. Boyer eventually resumed mental health treatment with a different provider; however, chart notes from these sessions reflect that she was showing

improvement with medication and counseling until situational factors, including stress from being reunited with her estranged son and abusive ex-boyfriend, and "dealing with [her daughter's] autism," exacerbated her symptoms. *Compare* Tr. 387-88 (showing improvement with medication and counseling through June 2010), *with* Tr. 366-85 (experiencing increased stress over situational factors after June 2010). Further, while Ms. Boyer reports a serious history of abuse and trauma, she failed to follow up on her counselor's referral to Victim's Services because she was "too busy." Tr. 57, 367. Although this could be interpreted more favorably to Ms. Boyer, the ALJ's analysis was reasonable. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (court must uphold ALJ's rational interpretation of evidence).

The foregoing discussion reveals that the ALJ provided clear and convincing reasons, supported by substantial evidence, to reject Ms. Boyer's statements regarding the extent of her limitations. As such, although the Court has not discussed all of the reasons offered by the ALJ for finding Ms. Boyer not credible, even if the ALJ erred in relying on some of those reasons, such an error was harmless. *See Carmickle v. Comm'r*, *Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (citations omitted). Therefore, the ALJ's credibility finding is affirmed.

**B. Medical Evidence**

Ms. Boyer also asserts that the ALJ erroneously rejected a discrete limitation offered by Dr. Lundblad. Additionally, Ms. Boyer contends that the ALJ failed to consider the Global Assessment Functioning ("GAF") scores assessed by Ms. Romig and that these GAF scores, alone, establish her entitlement to benefits at step three under listing 12.06.

**i. Acceptable Medical Source Evidence**

The Ninth Circuit distinguishes among the opinions of three types of medical opinions: treating physicians, examining physicians, and non-examining doctors. The opinions of treating

doctors are generally accorded greater weight than the opinions of non-treating doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another doctor may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining doctor over that of a non-examining doctor. *Lester*, 81 F.3d at 830. As is the case with the opinion of a treating doctor, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502 at 506 (9th Cir. 1990). If the opinion of an examining doctor is contradicted by another doctor's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining doctor's opinion. *Lester*, 81 F.3d at 830.

On November 25, 2011, Dr. Lundblad, a state agency consulting source, completed a "Psychiatric Review Technique" form and Mental RFC evaluation. Tr. 271-87. Out of the 20 areas assessed as part of the Mental RFC, Dr. Lundblad found that Ms. Boyer was mildly impaired in 14 categories, moderately impaired in five categories, and markedly impaired in one category. Tr. 285-86. Translating these limitations into concrete restrictions, Dr. Lundblad opined that Ms. Boyer "is able to complete a normal workday/workweek doing simple job tasks that [do] not require close interaction with co-worker[s] or working in the public eye" and "should not have to interact with the public [or] work around dangerous machinery due to lack of sleep." Tr. 287. Dr. Lundblad also determined that, although Ms. Boyer "is not limited in her ability to understand and remember job tasks, [she] would have difficulty carrying out complex

job tasks due to anxiety and depression symptoms." *Id.* Lastly, Dr. Lundblad stated that Ms. Boyer "would benefit from vocational rehabilitation guidance about job goals." *Id.*

Ms. Boyer argues that, despite the ALJ's apparent acceptance of Dr. Lundblad's opinions, the ALJ erred by tacitly rejecting her need for vocational rehabilitation. *See* Pl.'s Br. at 5. The Commissioner argues that the ALJ did not reject this restriction but rather found that it consistent with Ms. Boyer's RFC for "entry level work with no public contact and only occasional contact with co-workers in light of the record as a whole." Def.'s Br. at 16-17 (citing Tr. 22).

As preliminary matter, the Court finds that Dr. Lundblad's suggestion that Ms. Boyer would benefit from a vocational counselor to assist her in setting appropriate job goals is not a work-related limitation of function that needs to be reflected in the RFC. *See* SSR 96-8p, *available at* 1996 WL 374184. In other words, the fact that vocational rehabilitation may be advantageous to Ms. Boyer does not affect her ability to perform work-related physical and mental activities on a sustained basis. Further, the ALJ's finding that Dr. Lundblad's assessment was consistent with a limitation to entry level work, with no public contact and only occasional contact with co-workers, was a rationale interpretation of the evidence. *Compare* Tr. 22, *with* Tr. 271-87; *see also Batson*, 359 F.3d at 1198. Thus, the ALJ did not err in assessing Dr. Lundblad's opinion.

### ii. Other Medical Source Evidence

Between January and November 2010, Ms. Romig provided mental health counseling to Ms. Boyer. Tr. 365-403. As Ms. Boyer's treating counselor, Ms. Romig did not perform any clinical evaluations; her reports were based solely on Ms. Boyer's statements. *Id.* Ms. Romig

assessed Ms. Boyer's GAF score on multiple occasions, ranging from a low of 40 to a high of 50.[1] Tr. 393, 402.

As an initial matter, "[t]he GAF scale is a tool for reporting the clinician's judgment of the individual's overall level of functioning; accordingly, a GAF score reflects a snapshot of a claimant's presentation on the day of the examination." *Davis v. Astrue*, 2012 WL 4005553, *9 (D. Or. June 12), *adopted by* 2012 WL 3614310 (D. Or. Aug. 21, 2012) (quoting *Chapman v. Astrue*, 2009 WL 3046025, *4 (D. Or. July 30, 2009); and American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000) ("DSM-IV")) (internal quotations omitted). Accordingly, contrary to Ms. Boyer's assertion, a "GAF score does not determine disability." *Gardner v. Astrue*, 2009 WL 1505303, *10 (D. Or. May 27, 2009). Rather, the "GAF assessment is [but] one element of [a medical provider's] conclusion." *Id.* at *11. Although the record here contains treatment notes and diagnoses from Ms. Romig, only Dr. Lundberg rendered an opinion on the severity of Ms. Boyer's alleged impairments and their impact on her ability to perform work-related tasks. Based on that assessment, Dr. Lundberg found that Ms. Boyer did not meet or equal the criteria for any of the listings. *See* Tr. 271-86. As such, to the extent that Ms. Boyer contends that she is presumptively disabled at step three based on her GAF scores, her argument is rejected.[2]

---

[1] A GAF score between 41 and 50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." DSM-IV, at 32.

[2] Furthermore, Ms. Boyer does not argue with the requisite level of specificity concerning listing 12.06, under which she merely concludes that she is presumptively disabled. *See* Pl.'s Br. at 15. Notably, Ms. Boyer neglected to address or discuss any of the requirements of this listing. *Id.*; *see also Frost v. Barnhart*, 314 F.3d 359, 367-68 (9th Cir. 2002) (outlining the elements of listing 12.06). For this additional reason, Ms. Boyer failed to identify an error in regard to the ALJ's step three finding.

Ms. Boyer is correct, however, that the ALJ erred by silently rejecting Ms. Romig's

reports. *See Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir.1984) (Commissioner cannot

ignore significant, probative evidence). Nonetheless, as is the case here, "the court will not

reverse an ALJ's decision for harmless error, which exists when it is clear from the record that

the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v.*

*Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation and internal quotations omitted). Although

the ALJ did not address Ms. Romig's opinion, he did explicitly discuss the GAF scores assessed

by several other mental health counselors from the same clinic, which were obtained only

months before Ms. Boyer began treatment with Ms. Romig. *See, e.g.*, Tr. 22, 237-54. Regarding

to these other mental health opinions, the ALJ first noted that a "nurse practitioner and therapists

(MA) are not acceptable sources for medical opinion evidence." Tr. 22. The ALJ then afforded

"less weight" to the GAF scores generated by these other sources, which were slightly higher

than those assessed by Ms. Romig,[3] "because they are inconsistent with the record as a whole

including claimant's activities of daily living and ability to take care of a young child [and

because they] appear to be based solely upon claimant's subjective reporting of symptoms." *Id.*

Ms. Boyer does not challenge the ALJ's assessment of this evidence. *See* Pl.'s Br. at 13-15; *see*

*also Schow v. Astrue*, 272 Fed.App. 647, 651 (9th Cir. 2008) (affirming the rejection of an "other

source" opinion where "[t] he ALJ stated that [the nurse practitioner] was not an 'acceptable

---

[3] The expressly-rejected GAF scores ranged from 50 to 53. Tr. 22.  The Court, however, notes that, throughout Ms. Boyer's treating relationship with Ms. Romig, she was also periodically counseled by Daniel Schroeder, PMHNP, a mental health specialist from the same clinic. During this time period, Mr. Schroeder consistently assessed Ms. Boyer's GAF score at 55, with the highest in the last year being 60. *See, e.g.*, Tr. 364, 371, 386, 391. A GAF score between 51 and 60 indicates "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." DSM-IV, at 34.

medical source' and cited inconsistencies between her opinion and the medical record");
*Gardner*, 2009 WL 1505303, at *10-11 (ALJ did not err by rejecting an examining doctor's GAF assessment that was based on the claimant's statements, which were not credible).

In sum, the GAF scores assessed by Ms. Romig were consistent with those evaluated by other mental health practitioners from the same clinic and from a similar time period; the ALJ properly rejected the GAF scores provided by those other sources. Therefore, the Court finds that the ALJ's failure specifically to discuss Ms. Romig's reports was harmless error.

**C. Credibility of the Lay Testimony**

Ms. Boyer also contends that the ALJ failed to accord proper weight to the third-party statements of Kenneth Keverline, Desiree Coburn, and Kristin Harry.[4] An ALJ has a duty to consider lay witness testimony. *Molina*, 674 F.3d at 1114. An ALJ must provide "germane reasons" when rejecting lay testimony. *Id.* Nevertheless, the ALJ is not required to address each witness "on an individualized witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant properly found not credible. *Id.*

In November 2010, Ms. Boyer's friends and neighbors wrote letters on behalf of her applications for SSI and DIB. Tr. 212-214. Mr. Keverline stated that he goes to Ms. Boyer's house one to three times per week in order to take out the trash because "she can't lift it into the dumpster." Tr. 212. In addition, Mr. Keverline reported that he carries "her laundry to and from the laundry room once a week [and] I walk to the grocery store for her [because] she can't walk more than out to check her mail at the end of the parking lot." *Id.* Regarding her mental

---

[4] There are two other lay witness statements in the record; they are from Isaac Crowston and Jason Leisrius. Tr. 215-16. Ms. Boyer, however, does not discuss or refer to either of these statements and, as such, the Court presumes that the ALJ's reasons for rejecting the opinions of Mr. Crowston and Mr. Leisrius are unchallenged. *See* Pl.'s Br. 11-13. In any event, these lay reports either do not discuss Ms. Boyer's impairments or are duplicative of the third-party statements discussed above. Tr. 215-16.

impairments, Mr. Keverline testified that he babysits "when [Ms. Boyer] has to go to the hospital or dentist or therapy otherwise I know she won't go [since] she will make excuses to cancel because of her Social Anxiety." *Id.* He also remarked that helps Ms. Boyer out of bed some mornings. *Id.* Mr. Keverline's letter was silent as to the length of his relationship with Ms. Boyer or the period throughout which he provided assistance to her. *Id.*

Like Mr. Keverline, Ms. Coburn's testimony largely related to Ms. Boyer's physical limitations. Tr. 213. In regard to Ms. Boyer's mental limitations, Ms. Coburn stated that "[s]he has a hard time understanding simple things like budgeting . . . I'm an accountant, so I try to help her with hospital information and forms." *Id.* Ms. Coburn also stated that she has "been good friends with Krystal for 10 years [and] have watched her health get worse."

Ms. Harry testified that she also assists Ms. Boyer with carrying heavier items, house work, child care, and occasionally getting out of bed "because of back and knee pain." Tr. 214. Further, she reported that she helps Ms. Boyer brush her hair "because her shoulder hurts and she can't lift her arm for long." *Id.* Ms. Harry did not remark upon Ms. Boyer's mental impairments, other than to note that she "help[s] put things away [because Ms. Boyer] panics and gets overwhelmed." *Id.*

The ALJ "considered" and individually discussed the statements of Mr. Keverline, Ms. Coburn, and Ms. Harry, but ultimately rejected them because their "report[s] appea[r] based primarily upon claimant's subjective reporting of symptoms, which are inconsistent with the evidence of record." Tr. 23. Thus, the ALJ rejected the lay testimony for some of the same reasons he discredited Ms. Boyer's testimony; specifically, the ALJ found the statements of Mr. Keverline, Ms. Coburn, and Ms. Harry not credible because they were inconsistent with "the record as a whole including medical opinions and [the] claimant's activities of daily living." *Id.*

As discussed above, the ALJ provided clear and convincing reasons to reject Ms. Boyer's testimony; the ALJ thus did not err in discrediting the third-party statements for those same reasons. *See Davis*, 2012 WL 4005553 at *4-5 (upholding the ALJ's rejection of lay witness testimony where that testimony was inconsistent with the medical record as a whole and the plaintiff's activities of daily living) (citing *Valentine*, 574 F.3d at 694; *Molina*, 674 F.3d at 1114); *Lewis v. Apfel*, 236 F3d 503, 511-12 (9th Cir. 2001) (contradiction with medical evidence is a germane reason to discount the opinion of a lay witness). Therefore, the ALJ's findings concerning the lay testimony is affirmed.

## D. Step Five Finding

Finally, Ms. Boyer argues that the ALJ committed reversible error at step five by failing to inquire whether the VE's testimony was consistent with the DOT. The DOT is presumptively authoritative regarding job classifications, but that presumption is rebuttable. *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir. 1995). "[A]n ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Id.* Thus, before he may rely on the VE's testimony, an ALJ "must first determine whether a conflict exists." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). In accordance with Social Security Ruling 00–4p, the ALJ must ask the VE if her testimony is consistent with the DOT. *Id.* at 1152–53. The failure to so inquire is a procedural error.  Such an error is harmless, however, if there is no conflict between the VE's testimony and the DOT "or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts." *Massachi*, 486 F.3d at 1153-54; *see also* SSR 00–4p, *available at* 2000 WL 1898704.

At the December 2010 hearing, the ALJ posed the correct hypothetical to the VE. Tr. 18-19, 59-61. Based on this hypothetical, the VE identified three representative occupations that Ms.

Boyer could perform given her RFC: Office Custodian, *DOT* § 382.664-010, *available at* 1991 WL 673265; Linen Room Worker, *DOT* § 222.387-030, *available at* 1991 WL 672098; and Clothing Sorter, *DOT* § 222.687-014, *available at* 1991 WL 672131. Tr. 25, 59-61. While the ALJ noted in his decision that the VE's "testimony is consistent with the information contained in the [DOT]," the ALJ did not explicitly pose this question to the VE at the hearing. *Compare* Tr. 25, *with* Tr. 59-62.

Ms. Boyer asserts that, because the ALJ failed to ask the VE whether his testimony was consistent with the DOT, this case should be remanded. Ms. Boyer, however, does not articulate any specific discrepancies between the VE's testimony and the DOT. *See* Pl.'s Br. at 4-5. Ms. Boyer argues that the ALJ's decision should be reversed because of this procedural error. The Commissioner responds that, because Ms. Boyer "failed to identify any conflict whatsoever . . . [her] claims [in regard to this issue] are waived." Def.'s Br. at 6 (citations omitted).

The Court agrees with the Commissioner. Ms. Boyer's opening brief is silent regarding any alleged inconsistencies between the VE's testimony and the DOT and, furthermore, she did not file a reply brief after the Commissioner identified this shortcoming. A court only considers those "issues which are argued specifically and distinctly in a party's opening brief." *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994). Therefore, Ms. Boyer's bare recitation of this procedural error is insufficient. Additionally, an independent review of the record reveals that there are no patent disparities between VE's testimony and the DOT. Accordingly, the ALJ's step five finding is affirmed.

/ / /

/ / /

**CONCLUSION**

The Commissioner's decision that Ms. Boyer is not disabled is based on substantial

evidence and the proper legal standards; it is therefore AFFIRMED and this case is

DISMISSED.

DATED this 1st day of July, 2013.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge